

IN THE HEALTH CARE ALTERNATIVE DISPUTE
RESOLUTION OFFICE OF MARYLAND

| | |
|---|---|
| E███████ J███████, a minor, by and through her Parents and Next Friends, JOY M. JOHNSON and TYLER L. JOHNSON, and JOY M. JOHNSON and TYLER L. JOHNSON, Individually, | * <br> * <br> * <br> * |
| Claimants, | * |
| v. | *   HCA No.: _____ |
| SHORE HEALTH SYSTEM, INC., UNIVERSITY OF MARYLAND SHORE REGIONAL HEALTH, INC., and UNIVERSITY OF MARYLAND COMMUNITY MEDICAL GROUP, INC., | * <br> <br> * <br> <br> * |
| Defendant Health Care Providers. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CERTIFICATE OF QUALIFIED EXPERT

I, Kenneth L. Naylor, M.D., certify that the following statements are true and accurate:

1. I am a physician licensed to practice medicine in the State of Iowa.

2. I am board certified in the fields of obstetrics and gynecology.

3. In addition, I have clinical experience, have provided consultation relating to clinical practice, and/or taught medicine in the Defendant Health Care Providers' specialty and/or subspecialty of medicine, or the specialty and/or subspecialty of medicine practiced by the Defendant Health Care Providers' agents, servants, or employees, or a related field of health care within five years of the date of the alleged act or omission giving rise to the underlying cause of action.

4. From my review of the pertinent medical records of Joy M. Johnson and E████ █. J█████, I have concluded with reasonable medical probability that there were deviations from the accepted standards of care on the part of the Defendant Health Care Providers, Shore Health System, Inc., University of Maryland Shore Regional Health, Inc., and University of Maryland Community

Medical Group, Inc., each acting directly and each by and through their actual or apparent agents, servants, or employees, including but not limited to Jessica Ann Pate, CNM, Owen T. Regan, MD, Palak Doshi, DO, Shannon Benson, RN, Jessica Pretzler, RN, Rebecca Prestridge-Rider, RN, and Karen Denny, RN.

5. It is my opinion to a reasonable degree of medical probability that the deviations from the standards of care were a direct and proximate cause of E▮▮▮ J▮▮▮'s medical injuries and damages.

6. Attached is a brief statement and report of my opinion in this matter.

7. Less than twenty-five percent (25%) annually of my professional activities involve testimony in personal injury claims.

*Kenneth Naylor*
Kenneth L. Naylor, M.D.



**KENNETH L. NAYLOR, M.D.**
Obstetrics & Gynecology Specialists, P.C.
5350 Eastern Ave.
Davenport, Iowa 52807

February 1, 2022

Robert S. Lewis, Esquire
Wais, Vogelstein, Forman, Koch & Norman, LLC
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208

  Re: *E.J., a minor, et al. v. Shore Health System, Inc.*

Dear Mr. Lewis:

  I have reviewed the medical records of Joy M. Johnson and E.J., a minor, including the labor and delivery records of Ms. Johnson from UM Shore Medical Center at Easton, and the prenatal records of Ms. Johnson from UM Shore Medical Group Women's Health Easton and Anne Arundel Medical Group Maternal and Fetal Medicine Specialists, as well as the neonatal records of E.J. at UM Shore Medical Center at Easton and University of Maryland Medical Center in Baltimore, MD.

  As an initial background, I am a physician licensed to practice medicine in the State of Iowa. I am board-certified in Obstetrics & Gynecology by the American Board of Obstetrics & Gynecology since 1992. Over the course of that time, I have delivered roughly 125-150 babies per year. I have held numerous academic, hospital, and professional appointments over my career, am a member of the Iowa State Board of Medical Examiners, and accredited by the American Institute of Ultrasound in Medicine. Since 1990, I have held positions as Adjunct Clinical Associate Professor at the University of Iowa, have acted as the OB-GYN Department Chairman for Genesis Medical Center, and have been Medical Director for Women's Health. In addition, I am a member of the American College of Obstetricians and Gynecologists (ACOG), and have served in several leadership positions, including Chairman of the ACOG District VI Patient Safety Committee from 2009-11, as well as the ACOG National Patient Safety Committee from 2010-11, and currently serve as a Reviewer for the ACOG Voluntary Review of Quality Care. Based on this experience, education, training, and knowledge of obstetrics and gynecology, and based on my review of the relevant medical records and materials, it is my opinion to a reasonable degree of medical probability and/or certainty that the Defendant Health Care Providers deviated from the standards of care in their treatment of Joy M. Johnson and E.J. It is further my opinion to a reasonable degree of medical certainty and/or probability that the deviations discussed in detail below were a direct and proximate cause of E.J.'s injuries and damages.

  Joy M. Johnson was a 24-year-old G1P0000 with Estimated Date of Delivery of 3/11/19. She was seen for her first obstetric appointment on 7/31/18 at UM Shore Medical Group Women's Health Easton ("WHE"). An ultrasound completed on that date indicated there were two fetuses, with gestational ages assigned as 7 weeks 3 days for Baby A and 8 weeks 0 days for Baby B. At her appointment, Ms. Johnson denied any family or personal history of trisomy, mental retardation, CF, sickle cell, or any chromosomal abnormalities, and no other abnormalities were reported. Ms. Johnson was seen again on 10/5/18 at WHE at 17w4d gestation. She reported daily headaches and that she had been drinking 10 glasses of water a day, and she denied vaginal bleeding, leakage of fluids, or contractions. Ms. Johnson was then seen on 12/5/18 at 26w2d gestation and reported no complaints, no vaginal bleeding, no leakage of fluid, no contractions, and fetal movement was reported normal. A fetal anatomy scan was reported as normal for visualized structures, with follow-up views requested in two weeks.

*E.J., et al. v. Shore Health System, Inc, et al.*
**February 1, 2022**
Page 2 of 6

On 12/19/18, at 28w2d gestation, Ms. Johnson was seen at WHE for a routine obstetrical visit with di-di twin pregnancy noted. She again reported that she was doing well and denied any complaints or concerns. She reported normal fetal movement and denied vaginal bleeding, leakage of fluid, or contractions. An ultrasound for follow-up views was completed and no abnormalities were noted. Ms. Johnson was again seen on 1/8/19 at WHE and no abnormalities were noted, and the babies were reported to be very active with no signs of preterm labor.

Ms. Johnson was seen by Jessica Ann Pate, CNM on 1/15/19 at 32w1d gestation at WHE. Again, positive fetal movement was noted. Biophysical profiles ("BPP") were performed, and Baby A was noted to be 52.5% at 291g, vertex with normal dopplers and BPP 6/8 (breathing not observed), and Baby B was noted to be 26.7% with AC of 5.7%, breech, with normal dopplers and BPP 8/8. An appointment for consult with maternal-fetal medicine specialist was made.

Ms. Johnson was seen by Maternal and Fetal Medicine Specialists at Anne Arundel Medical Group on 1/18/19. Elizabeth T. Greeley, MD noted that the "Ultrasound shows active fetuses. The growth is normal and concordant. The amniotic fluid volume is normal for both. The umbilical artery S/D ration was normal for gestational age," and both fetuses were given 8/8 BPP scores.

At her next appointment at WHE on 1/23/19, Ms. Johnson again reported that she was doing well, and positive fetal movement was noted. Biophysical profiles for the twins were both recorded as 8/8. Ms. Johnson was seen again on 1/29/19 at 34w1d gestation. Normal fetal movement was noted, and she denied vaginal bleeding, leakage of fluid, or contractions. Biophysical profiles were noted as 8/8, and Baby B was again noted to be breech.

Ms. Johnson was seen at WHE on 2/7/19 by Owen T. Regan, MD. Dr. Regan recorded no complaints, and noted, "NST FHR (non-stress test fetal heart rate) 130's x2 Category one, some irritability, one probable contraction in 30 min."

Early the following morning, on 2/8/19, Ms. Johnson awoke with concerns for possible preterm labor and reported leakage of fluid and likely partial premature rupture of membranes. Ms. Johnson arrived at UM Shore Medical Center at Easton ("SMCE") in the early morning on 2/8/19 and was noted as at being admitted to Exam Room 3, in bed BC Triage-3, at 0555 by Shannon Benson, RN. From 0555 until 0631, the twin fetuses were not monitored, and there are no notes to indicate whether there were any attempts to monitor the babies, collect blood or urine samples, or perform any interventions or provide any care at all.

At approximately 0631—36 minutes after arrival to SMCE—the electronic fetal heart rate monitor ("EFM") begins tracing. The initial tracing for FHR2 is concerning for multiple variable decelerations by 0638, with the tracing becoming increasingly concerning at around 0643. At 0643, Jessica Ann Pate, CNM noted Ms. Johnson was being "admitted for labor and PROM" and that Ms. Johnson "reports SROM of clear fluid at 0545, and contractions started shortly after SROM, progressing in frequency and intensity." CNM Pate additionally noted normal fetal movement, but that Baby "B" was "breech verified by ultrasound per Dr. Doshi at bedside." CNM Pate also noted that Baby "A" fetal heart rate ("FHR") was 125 BPM baseline, with moderate variability, but with no accelerations, variable decelerations present, and it was interpreted as Category 2. Ms. Johnson was noted to be 6 cm dilated, 100% effaced, and -1 station. Labs were then ordered, but specimens were not collected until 0745. Anesthesia was not contacted at this time.

At 0650, CNM Pate noted that she was called to triage and that Ms. Johnson was "fully dilated and pushing with good effort." She noted that Dr. Gordon (with CWH practice) was present for vaginal birth of

2

*E.J., et al. v. Shore Health System, Inc, et al.*
**February 1, 2022**
Page 3 of 6

Twin "A" and that Dr. Owen Regan was "present 4 min following delivery and assumed care of patient." Twin "A" was delivered at approximately 0658, and Dr. Regan arrived to triage at 0702. Anesthesia still had not been contacted. The decision was then made to transfer Ms. Johnson to the OR "for delivery of second baby" at 0708.

At the time of the transfer to the OR, the OR was not set up for surgical delivery and anesthesia was not present. In the OR, an unsuccessful attempt at the ECV was made by Dr. Regan at 0712.

At 0713, Jessica Pretzler, RN noted: "SETTING UP FOR CSECTION" and the records indicate that the "Decision for emergent c-section made [at] 0714." It is likely at this time that anesthesia was finally called. From approximately 0702 through the time of delivery, EFM was disconnected and the fetal heart rate was not being continuously monitored.

At 0727, Nurse Pretzler noted, "DR BERNARD CALLED TO DELIVERY SAID SHE IS ON HERWAY." Gina Exantus-Bernard, MD was the neonatologist referenced who was called to delivery, but it is unclear what time she arrived in the OR.

Douglas F. Wiseman, MD, anesthesiologist, arrived to the OR by approximately 0726, and induction was noted at 0734. Intubation of Ms. Johnson occurred at 0735, and "Anesthesia Ready" was noted at 0735. The incision was made at 0736, and E.J. was delivered at 0739.

At delivery, Owen T. Regan, MD noted the baby was a complete breech and that the patient was taken directly (from triage) back to the cesarean delivery room, and anesthesiology was notified by the nursing staff, but it is not clear what time that notification occurred. After the foley catheter was placed in the OR and the patient was prepared and draped, an ultrasound view of the heart rate revealed the presence of a persistent fetal bradycardia as preparations for surgery were underway. After anesthesia was noted ready and the initial incision was made at 0736, artificial rupture of membranes was performed with release of clear amniotic fluid. Dr. Regan's hand was introduced into the amniotic cavity and the breech was elevated and E.J.'s head was delivered as a frank breech through the incision at 0739.

The code blue light was called to initiate the Rapid Response team at 0741. E.J. was suctioned, given positive pressure ventilation, and chest compressions were initiated for several minutes. She was noted to be limp without heart rate, and Apgar scores were assigned as 0, 3, and 4 at 1, 5, and 10 minutes, respectively. Venous cord gas (noted as obtained an hour after birth) was documented as: pH: 6.74, PCO2: 59, PO2: 20, and Base Excess: -29. Arterial blood gas at 30-45 minutes of life was documented as: pH: 7.15, PCO2: 24, PO2: 155, and Base Excess: -19. These blood gas results indicate significant acidemia. E.J. weighed 2215 g, was 40.6cm long, with head circumference 27.9 cm.

E.J. was transferred to University of Maryland Medical Center ("UMMC") for therapeutic hypothermia treatment. The transport team was called at 0835 and arrived to SMCE at 1025. Passive cooling was initiated at 0915. Transport to UMMC was completed at approximately 1248.

At arrival to UMMC, she had persistent metabolic acidosis with a respiratory acidosis component, which improved over the next 12 hours with ongoing resuscitation. Blood cultures resulted as negative. Cooling was initiated for 72 hours and she was rewarmed on 2/11/19. A Head Ultrasound was completed on 2/8/19 at 1334 which was noted to be normal and described as follows: "FINDINGS: The visualized brain parenchyma is within normal limits. The corpus callosum is present. Normal appearance of the caudothalamic grooves without evidence of acute hemorrhage. No ventriculomegaly. Visualized posterior

*E.J., et al. v. Shore Health System, Inc, et al.*
February 1, 2022
Page 4 of 6

fossa is unremarkable. IMPRESSION: No evidence of acute intracranial hemorrhage." Brain MR was performed on 2/16/19 at 0045 with findings described as follows: "FINDINGS: Symmetric restricted diffusion with associated T1 hyperintensity and T2 hypointensity in the bilateral lentiform nuclei, thalami, midbrain, hippocampi and perirolandic regions consistent with hypoxic anoxic brain injury. No acute intracranial hemorrhage. The corpus callosum is present. No hydrocephalus and no mass effect. No extra-axial fluid collections. Cavum septum vergae and pellucidum present. … Impression: 1. Findings consistent with hypoxic anoxic brain injury…"

E.J. spent a month in the UMMC NICU, and was finally discharged on 03/09/2019 with diagnoses of, among other things, seizures in newborn, persistent pulmonary hypertension in newborn, and HIE (hypoxic-ischemic encephalopathy). She now suffers permanent and severe injuries as a result of her injuries at birth.

Based on my education, training, and experience, as well as my understanding of obstetrical and perinatal literature, it is my opinion to a reasonable degree of medical certainty and probability that the Defendant Health Care Providers, Shore Health System, Inc., University of Maryland Shore Regional Health, Inc., and University of Maryland Community Medical Group, Inc., each acting directly and each by and through their actual or apparent agents, servants, or employees, including but not limited to Jessica Ann Pate, CNM, Owen T. Regan, MD, Palak Doshi, DO, Shannon Benson, RN, Jessica Pretzler, RN, Rebecca Prestridge-Rider, RN, and Karen Denny, RN, violated the standard of care as follows:

Initially, the standard of care required that the obstetricians, midwives, and/or hospital nursing staff timely and appropriately examine the newly admitted laboring patient. In this case, the providers took at least 35 minutes to connect the EFM and did not timely perform a vaginal exam, which would be a breach in the standard of care in a singleton pregnancy, but is even more concerning in a patient with twins, with one known to be breech, and a mom who has reported ruptured membranes. Here, the triage nurses, including Shannon Benson, RN, Jessica Pretzler, RN, Rebecca Prestridge-Rider, RN, and Karen Denny, RN, should have timely initiated EFM upon arrival to SMCE, timely placed an IV, initiated admission standing orders, and contacted the CNM and OB for immediate evaluation and to alert the anesthesiologist of the likely need for anesthesia. Here, however, the records indicate that the nursing staff breached the standards of care in failing to do almost everything required of them as they do not appear to have provided any substantive care for the first 35 minutes after Ms. Johnson arrived.

Further, it does not appear that any provider interpreted the EFM until 0643, and when it was reviewed, it was interpreted improperly by CNM Pate. It is unclear from the records if any nurse ever evaluated the tracing. FHR2 is clearly concerning, and an OB should have been made immediately aware of the tracing concerns and non-reassuring fetal heart rate. CNM Pate additionally did not perform a vaginal exam until approximately 0643, and CNM Pate, Dr. Doshi, and the nurses failed to notify or alert the anesthesia team despite CNM Pate recording the cervix as 6 cm dilated, 100% effaced, and -1 station, and despite documenting the "likelihood of need for c-section for Baby 'B'."

At 0650, CNM Pate was again called to triage and noted that Ms. Johnson was fully dilated and +1 station. Dr. Doshi and Dr. Regan were eventually notified but did not arrive until minutes after the delivery of Twin "A," arriving at 0702. Despite arriving in labor with ruptured membranes and a known breech twin, and despite acknowledging the likelihood for needing to delivery Twin "B" by C-section, anesthesia still had not been called, and the OR had still not been opened and prepared for C-section delivery.

*E.J., et al. v. Shore Health System, Inc, et al.*
February 1, 2022
Page 5 of 6

When Dr. Regan finally arrived to the triage bedside to see the patient for the first time at 0702, 67 minutes after her arrival to the hospital, he failed to recognize and appreciate the need for an emergent delivery of Twin "B." He and Dr. Doshi failed to notify the anesthesia team, failed ensure the OR was prepared for the likelihood of needing a stat C-section delivery, and failed to order a tocolytic and proper fetal monitoring.

Dr. Regan and Dr. Doshi then inappropriately attempted an ECV in the OR without anesthesia present and without the baby being appropriately monitored, and without the use of terbutaline. It was additionally a breach in the standard of care to fail to properly monitor E.J. for the time after the EFM was disconnected at approximately 0702 through delivery at 0739. Moreover, it was a breach in the standard of care for Dr. Doshi and/or Dr. Regan to fail to call for the C-section delivery until 0714.

In the case, the standard of care required that Ms. Johnson be timely evaluated by the triage nursing team at arrival, and the EFM should have been initiated by the nurses by approximately 0610. Additionally, the nurses were required to timely notify the obstetrician that a mother with twins had arrived, was in labor, one twin was noted to be breech, and that she had reported rupture of membranes. Had the obstetrician been notified, a reasonably trained and prudent physician would have and should have notified anesthesia, informed the OR of the likelihood of the need for a C-section delivery of the breech twin, entered admission orders, including starting an intravenous line and drawing blood as necessary, and performed a cervical exam. Here, none of those actions were taken, in breach of the applicable standards of care.

Once notified by the nurses, CNM Pate was required to properly assess the status of the twin fetuses and should have appreciated the non-reassuring Cat 2 tracing with repetitive decels in Twin B. Instead, it appears she left the bedside and took no further steps to ensure the safety of the mother and twin babies. Again, she was required to inform the obstetricians of the need for rapid evaluation for anesthesia and likely imminent delivery by C-section. Similarly, Dr. Palak Doshi was also noted as present at 0643, but does not appear to have taken any steps toward ensuring a safe delivery, did not enter any orders, did not contact anesthesia or alert the OR, and does not appear to have reviewed the EFM.

Shore Health System, Inc., University of Maryland Shore Regional Health, Inc., and/or University of Maryland Community Medical Group, Inc. additionally had a duty to have in place appropriate policies, procedures, and protocols for admitting and monitoring laboring patients, and effectuating routine, urgent, or emergent cesarean deliveries. This includes a duty to create and have in place appropriate policies, procedures, and protocols to educate, train, or supervise healthcare providers with regard to:

a. timely and appropriately admitting a patient with twins in preterm labor to the labor and delivery department, including monitoring and examining a laboring patient;

b. timely and appropriately admitting a patient with twins with complaints of preterm labor and ruptured membranes, including monitoring and examining the patient;

c. encouraging proper and effective communication among healthcare providers, including the nursing staff, obstetricians, midwives, and anesthesiologists, to ensure that an emergency C-section is begun and completed in a timely manner;

d. ensuring midwives are appropriately supervised and/or credentialed or privileged for treating high-risk patients, including twins and/or breech patients;

*E.J., et al. v. Shore Health System, Inc, et al.*
February 1, 2022
Page 6 of 6

      e.  ensuring the presence and availability of appropriate healthcare providers to timely examine, admit, and treat patients, and respond to potential complications;

      f.  taking a proper maternal medical history, including reviewing prior deliveries, lab results, ultrasounds, and other medical records as necessary to ensure orders are timely entered;

      g.  timely and appropriately notifying the anesthesia team of the need for evaluation and induction of anesthesia;

      h.  timely and appropriately alerting the OR and/or OR team to the need to prepare for likelihood of emergent or stat cesarean delivery;

      i.  timely and appropriately performing an external cephalic version on a breech twin;

      j.  timely and appropriately assessing a breech twin; and

      k.  timely and appropriately evaluating a laboring patient, including initiating and interpreting the EFM, performing a cervical exam, starting an IV, and alerting the healthcare providers.

      The failure to have the above policies, procedures, and protocols in place would be a breach in the standard of care. In the event the institutional healthcare providers in fact had in place the policies, procedures, and protocols described above, it is my opinion that the institutions failed to appropriately train, educate, supervise, or drill the healthcare providers on the policies, procedures, and protocols.

      With reasonable medical probability, it is my opinion that the above breaches in the standards of care were a proximate cause of the injuries E.J. sustained. Had the Defendant Healthcare Providers, Shore Health System, Inc., University of Maryland Shore Regional Health, Inc., and University of Maryland Community Medical Group, Inc., each acting directly and each by and through their actual or apparent agents, servants, or employees, including but not limited to Jessica Ann Pate, CNM, Owen T. Regan, MD, Palak Doshi, DO, Shannon Benson, RN, Jessica Pretzler, RN, Rebecca Prestridge-Rider, RN, and/or Karen Denny, RN, complied with the standards of care discussed above, E.J. would have been delivered at a point in time such that she would not have suffered an anoxic brain injury and its severe sequelae, and she would have avoided the injuries and damages she sustained.

      The report is not, nor is it intended to be, an exhaustive description of all my opinions, conclusions, or their basis. My opinions are given with a reasonable degree of medical probability or certainty, and may be supplemented upon review of additional information.

Sincerely,

*Kenneth Naylor*

Kenneth L. Naylor, M.D.

IN THE HEALTH CARE ALTERNATIVE DISPUTE
RESOLUTION OFFICE OF MARYLAND

| | |
|---|---|
| E█████ J█████, a minor, by and through her Parents and Next Friends, JOY M. JOHNSON and TYLER L. JOHNSON, and JOY M. JOHNSON and TYLER L. JOHNSON, Individually, 2626 Prancing Stream Dr. Spring, Texas 77373 | * * * * |
| Claimants, | * |
| v. | * HCA No.: _____ |
| SHORE HEALTH SYSTEM, INC., 219 South Washington Street Easton, Maryland 21601 | * * |
| UNIVERSITY OF MARYLAND SHORE REGIONAL HEALTH, INC., 219 South Washington Street Easton, Maryland 21601 | * * * |
| and | * |
| UNIVERSITY OF MARYLAND COMMUNITY MEDICAL GROUP, INC., 509 Idlewild Avenue Easton, Maryland 21601 | * * |
| Defendant Health Care Providers. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECEIVED FEB 3 2022 HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE

## WAIVER OF HEALTH CLAIMS ARBITRATION

Claimants, through undersigned counsel, hereby declare:

1.      Pursuant to MD. CTS. & JUD. PROC. ART. § 3-2A-06B, the Claimants hereby unilaterally waive and relinquish hearing of the instant matter before a Health Care Alternative Dispute Resolution Arbitration Panel and elects to proceed directly to the United States District Court for the District of Maryland, Southern Division.

1

2.  This Waiver of Arbitration is being filed subsequent to Claimants filing Certificates of Qualified Expert and Reports.

3.  This Waiver of Arbitration is also being filed prior to the Defendant Health Care Providers filing a Certificate of Qualifying Expert or Answer.

Respectfully submitted,

WAIS, VOGELSTEIN, FORMAN, KOCH & NORMAN, LLC

Mary M. Koch (MD CPF No. 8806010231)
Robert S. Lewis (MD CPF No. 1412170152)
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
T: (410) 998-3600
F: (410) 998-3680
mary@malpracticeteam.com
rsl@malpracticeteam.com
*Counsel for Plaintiffs*

2